[Crim. No. 960.    Fourth Dist.    May 27, 1954.]

THE PEOPLE, Respondent, v. JAMES CAESER JUSTICE, Appellant.

Carl B. Shapiro for Appellant.

Edmund G. Brown, Attorney General, and Wilbur B. Thayer, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant was charged with the offense of assault with a deadly weapon with intent to commit murder, alleged to have been committed on June 21, 1953. He was convicted by a jury of the included offense of assault with a deadly weapon. Defendant, according to the minutes of the court, was "duly arraigned." After stating he would appear without counsel for the purpose of entering a plea and having his case set for trial, he entered a plea of not guilty. A jury trial was ordered for August 25th. Defendant, in person, moved for a reduction in bail, which was denied. The date of trial was continued to August 26th (at whose request is not shown). All witnesses appearing on August 25th were instructed to return on August 26th. Defendant appeared at that time, in person, and made no request that he be represented by counsel.

According to the reporter's transcript, the jurors were called, selected, empaneled and sworn to try the case. Apparently defendant participated in the selection of the jury. The information was read and defendant's plea thereto stated. Witnesses were sworn and were fully cross-examined by defendant with some apparent ability. Thereafter, the people rested. Defendant was sworn and examined. The prosecution argued and defendant Justice, in person, argued his case to the jury. After his conviction the defendant, in person, moved for a new trial on the ground of insufficiency

of the evidence and because a witness of his was not present at the trial. The motion was denied and time was fixed to pronounce judgment. Defendant then asked if that time could be waived and judgment pronounced immediately. The request was denied. During these entire proceedings the defendant did not request the services of an attorney and never made any point of that fact. He thereafter secured an attorney to appear for him at the time of pronouncement of judgment and to secure a continuance of the hearing. (What happened to that counsel thereafter is not indicated.) Defendant subsequently appeared in person for the pronouncement of judgment without counsel. Judgment was pronounced and he was committed to state's prison. Thereafter, in propria persona, he filed a notice of appeal. He subsequently contacted another attorney who prepared his brief on appeal in which he claims, for the first time, that defendant was deprived of his constitutional right to counsel at the trial and by reason thereof he was denied a fair trial.

As to what was said by the court at the time of the arraignment for plea of the defendant is not reported. ■ The record shows that defendant was "duly arraigned." We must assume or imply, in the absence of any other evidence, that the law was obeyed (Code Civ. Proc., § 1963, subd. 15) ; that defendant was duly arraigned under section 987 of the Penal Code and was informed by the court of his right to counsel, and was asked if he desired the aid of counsel. Since none was assigned him it will be presumed he did not desire counsel to defend him. (*People* v. *Miller,* 137 Cal. 642, 646 [70 P. 735].) The fact that defendant waived his right to counsel at the time of his arraignment for the limited purposes indicated shows that the court must have fully informed him of his right to counsel at all stages of the proceedings. The record does not indicate anything to the contrary and defendant does not now contend otherwise but contents himself with the claim that he did not affirmatively waive his constitutional right to the services of an attorney. We see little merit to this contention. The statute does not prevent a defendant from waiving his right to the aid of counsel and defending himself, subject to the requirement that his waiver of the right to counsel be made understandingly, competently and voluntarily, in the exercise of a free choice. (*People* v. *Ballentine,* 39 Cal.2d 193, 196 [246 P.2d 35] ; *In re James,* 38 Cal.2d 302, 313 [240 P.2d 596].)

It clearly appears from the record that defendant waived

his right to the aid of counsel. ▮ A defendant who, after judgment, seeks relief because of denial of counsel has the burden of establishing the fact that he did not in fact competently and intelligently waive the right. (*In re Connor*, 16 Cal.2d 701 [108 P.2d 10].) Whether the waiver of the right to counsel has been intelligently and competently made depends upon the particular facts and circumstances in each case, including the background, experience, and conduct of the defendant. (*People* v. *Rose*, 42 Cal.App. 540, 554 [183 P. 874].) ▮ The facts show that defendant knew enough about his right to counsel on the day of arraignment, not only to realize he had such a right but to also know he could waive such right. *People* v. *Chesser*, 29 Cal.2d 815 [178 P.2d 761], sets forth some of the circumstances to be considered in determining this question. In the instant case the record shows that defendant considered himself a minister, and that he completed the tenth grade of school; that he had been tried three times before for "traffic and drunk" offenses, and was represented by an attorney; that he was better acquainted with court trials and procedures than the average person, and undoubtedly gained knowledge of his rights. He was intelligent enough to speak in his own defense, to cross-examine witnesses for the prosecution, and to carry on an intelligent development of his case. These facts are self-evident, and he must have had intelligence enough to know what he was doing when he waived his right to counsel. The record further indicates that the defendant had, previous to trial, consulted counsel on the charge in question. Based upon these facts and the authorities cited, it is clear that the defendant waived counsel and did so intelligently.

The complaint as to the lack of a fair trial is predicated mainly upon the fact that only 20 minutes was consumed in selecting the jury and that it took only one day to try the case; that the court should, in the interest of justice to the defendant, have made a more thorough examination of the jurors as to their qualifications to act, citing section 1181 Penal Code, and such cases as *People* v. *Diaz*, 105 Cal.App.2d 690 [234 P.2d 300]; *People* v. *Talle*, 111 Cal.App.2d 650 [245 P.2d 633]; *In re Connor*, 16 Cal.2d 701 [108 P.2d 10]; and California Constitution Article I, section 13.

Contention is also made that the trial court improperly limited defendant's cross-examination of a witness; that a doctor, who testified for the People, was not shown to be qualified as an expert; that undue lapse of time between the time

of the commission of the offense and the date of examination by the doctor elapsed; that there were inconsistencies in the testimony of the complaining witness and that he was prejudiced by continuing the case from August 25th to August 26th, without his consent. It is also claimed that by reason of defendant's lack of experience in legal procedure, not knowing when to make timely objections, he was denied a fair trial. He stresses the claim that by reason of the continuance, a witness whom he desired to produce or have present at the trial did not appear on August 26th, and accordingly he was deprived of the benefit of his testimony. He also argues that it was incumbent on the prosecution to produce the broken bottle neck and split masonite board involved in the incident, at the trial, before a conviction of assault with a deadly weapon could be sufficiently established.

We have examined in detail all of these claims and find them to be lacking in merit. ▮ This will be disclosed by a brief statement of the facts supporting the crime of which defendant was convicted, which evidence defendant claims is insufficient to support such charge.

The jurors were examined by the court as to their qualifications. Defendant, in a motion for new trial, claimed that one of the jurors was acquainted with *defendant*. He now claims he then meant *complaining witness*. There is no indication that such acquaintanceship would have any effect on the verdict rendered in the case.

There was no showing at the trial that defendant ever subpoenaed any witness to testify in his behalf or that such a witness was present on August 25th. All witnesses present on that day were ordered to return on August 26th, and defendant made no complaint to the court because of the absence of any witness. In fact, after defendant testified, the court asked him: "Do you have any other witnesses?" and defendant replied: "No, I don't have, Your Honor." There still was no showing made in the trial court who the witness was supposed to be or what he would testify to, or that his testimony, if given, would be material.

At the trial the complaining witness, Christina Justice, who was separated or divorced from defendant at the time, testified that she and her three small children were living in a house owned by defendant and her on a desert location about 10 miles from Desert Hot Springs; that one Shelley also lived there; that dirt roads were the only means of access to it; that about 8:15 a. m. on June 21st, she went to say good morning

to defendant and she was met by a statement, in no uncertain terms, that he wanted her to die; that as she retired from his room she saw him raise a chair and heard him call her an offensive name; that she ran out of the door; that she had with her two half gallon jugs used to carry drinking water from the near-by well; that defendant overtook her and hit her over the head with a masonite board, breaking the board in two, and knocking her to the ground in a stunned condition; that she, while crouched in a sitting position, next noticed defendant with a broken beer bottle neck in his hand with long jagged edges threatening her; that she raised her arms to protect herself and defendant inflicted severe cuts about her hand and arm with the bottle neck; that he threatened to kill her and throw her in the well; that he kicked her and demanded that she go to the well; that she did so while defendant pressed her back with the jagged bottle neck; that he commanded her to run into a barbed wire fence which she did do and her leg was cut; that she talked defendant out of throwing her in the well by promising to help him solicit funds for his missionary work; that the blood was running from her wounds and defendant thereafter helped bathe them and told her she could not call the police out there in the desert as she had done in Los Angeles; and that he was the law out there. She had no means of transportation to the nearest town, and no one to care for her children. It was not until July 3rd, when a deputy sheriff came to the residence, that she reported the claimed attack. On July 13th she filed the formal complaint.

The doctor, who was a resident physician at the county hospital and who received his medical degree from the University of Southern California six months prior thereto, testified he examined her on July 13th and that there were scars, 1 to 2 inches long and about three weeks old, on her wrist, little finger and thumb, and that in his opinion they were caused by some sharp object.

Defendant testified the complaining witness was running out of the house swearing, for some unknown cause, with two jugs in her hands, and that she fell and broke the bottles and cut her wrist; that she ran toward the well and he ran after her to "catch her"; that in running she looked back and ran into the barbed-wire fence; that her hands were cut and he helped her release herself from the wire and later bathed her wounds. Defendant claimed there had

been a difference of opinion between them as to the ownership of the desert property.

A deputy sheriff interviewed the defendant after his arrest. He testified that defendant said this occurrence took place on July 1st, and that the cuts healed fast because he had applied a powerful healing antiseptic. At the trial defendant maintained that it occurred on June 20th and that he never told the officers it occurred on July 1st.

From the facts related and the record presented, we conclude that there is no merit to the claims set forth which would constitute grounds for a reversal of the judgment.

Judgment and order denying a new trial affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 23, 1954.