[Crim. No. 5315. Second Dist., Div. Two. Apr. 28, 1955.]

## THE PEOPLE, Respondent, v. ANTONIO ANDREW SIMEONE, Appellant.

Antonio Andrew Simeone, in pro. per., and Morris Lavine, under appointment by District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and James D. Loebl, Deputy Attorney General, for Respondent.

MOORE, P. J.—Having been convicted of assault with a deadly weapon and of assault by means of force likely to produce great bodily injury (Pen. Code, § 245), appellant seeks a reversal on the grounds of errors in rulings, prejudicial remarks of the court and of the district attorney, and in denial of the right to counsel. No claim is made that the

evidence was insufficient to support the judgment, although it is charged that the testimony of the prosecutrix was so "biased" that its admission is prejudicial error.

It appears that appellant and his wife had experienced some unhappiness and he had absented himself from home. When they met on the street, she refused his offer to escort her home, but when she arrived, there he was waiting. He tried to persuade her to permit him to return to the apartment. When she firmly denied his offer, he said: "For the last time, and I want a straight answer from you, am I moving in or not." Her answer was: "You are not." To that he replied: "Then you give me no choice." He thereupon took a small knife from his suitcase and followed his frightened wife into her bedroom and said: "I am going to kill you." While their daughter, Christina, remonstrated, he raised his hand and approached the mother with the knife pointed towards her face. In the scuffle, the knife first cut her wrist and then cut his finger. The second interference of Christina enabled Mrs. Simeone to escape and run away. She returned with the police who took appellant to the station.

On the following afternoon, May 14, appellant returned to his wife's apartment and sat for two hours; told her that if he did not move in he would "fix her good." When he departed, he said: "I am going now, but I'm coming back; you had better think this thing over; if [you] don't—when I come back and you don't talk tough, I can't stay here, I am going to kill you; you're my wife . . . if I can't have you, nobody else will have you."

Appellant continued to visit his wife each night about 9 o'clock and remained until the police came. On at least one occasion he beat her head and jaw and caused her to faint and her children to plead with him to leave. On the morning of May 24 he met her on the way to work and said: "Look, you can go to work but before you go I want you to remember one thing, I've thought this all over very carefully. I am going to give you four days to think this thing over. Either I move in within that time or I'm going to kill you." True to his threat, he returned on May 28. When she opened the door slightly, he pushed it open against her, and struck her face with a large package of ice cream. When she attempted to escape, he grabbed her and pulled her towards the balcony, forced her back over the railing and as she resisted, he kept repeating: "I'm going to kill you! I told you I was and this is it! I'm going to give it to you!" The woman's screams brought her daughter and a Mr. Tate.

Soon the police came and took both parties to the Wilshire station, where appellant talked freely to Officer Jackson. He denied striking his wife on May 28; said she grabbed him and that thereupon he struck her with the half gallon of ice cream in defending himself; said on May 13 he brought a traveling bag to her home; that it contained knives which he removed while there but did not use them to cut his wife. When asked whether he had a knife in his hand May 13 and advanced toward her, he refused to answer "until he had an attorney." His testimony was substantially the same. As to his call on May 28th, he testified that he "threw the ice cream up in the air and it hit her"; that he "grabbed her around the waist and coming out of the door . . . I was dragged with her up against the bannister." The evidence above recited was sufficient to support the verdicts on both counts I and III.

### THE JUDGE NOT PREJUDICED

On June 22 the court appointed the public defender to represent Mr. Simeone, but on June 25 defendant relieved him as counsel, stating he wanted private counsel.

Appellant says that at the time he appeared before the court on July 21, 1954, Judge Fricke said, "So you're the fellow who thinks he's smarter than the lawyer and the judges." There is no reference to the transcript for such language, and it has not been found to date. ▮ Such assignment cannot be considered in the absence of the words from the transcript. If the pronouncement was made, it was incumbent upon appellant to have it included in the record. (Rule 33(b), Rules on Appeal.)· Even if the record contained it, no showing is made that appellant was prejudiced thereby.

He says at his request the court continued the trial to August 4. On that date he asked "for another postponement" so that he could subpoena witnesses and confer with counsel. The court continued the trial to August 16. Appellant says: "on the day of trial Defendant insisted that he could not defend himself properly, but Judge Fricke would not hear it. And Defendant was forced to proceed." The record shows no insistence or mention by defendant that he could not defend himself. It does disclose the court's continual assistance in observing the rules of correct procedure.

Appellant says that due to his incarceration he did not have the power or freedom properly to subpoena witnesses for his defense. His own statement shows that he had ample opportunity to have witnesses subpoenaed between June 25

and August 16. If he was in the county jail, he had nothing to do but give a list of his witnesses with addresses to the jailer and they would have been in court. The only power necessary to enable appellant to get his witnesses at court was to tell a clerk or a deputy sheriff. By the four witnesses he called and others he had available, he did not establish that one had witnessed the assaults of May 13 and 28, for which he was on trial.

Appellant complains that the prosecuting attorney asked him to plead guilty, that he had the case won. Such request of the lawyer is not to be found in the record. Therefore, it cannot be considered.

Appellant contends that the court prejudiced him by certain preliminary remarks to the jury on the nature of the crimes charged. Such remarks were merely an attempt to acquaint the jury with the law applicable to the case they were about to hear. There is nothing in them to cause prejudice; neither did they contain a misstatement of the law.

Appellant says he was denied due process of law. This claim arises out of the facts as recited by him: that he, an inexperienced, impecunious layman, asked the court to appoint counsel to defend him; that the public defender was appointed but was rejected by appellant. However, despite the fact that such rejection was not justifiable, he contends that out of five thousand lawyers in the county of Los Angeles available, there was no problem about selecting a lawyer to represent an indigent defendant as his private counsel. In his supplemental brief he cites many decisions of the federal Supreme Court holding that ''a defendant should be afforded a fair opportunity to secure counsel of his choice'' (*Powell* v. *Alabama*, 287 U.S. 45 [53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527]); ''in criminal prosecutions in any court the party accused shall have the right to appear and defend in person and with counsel'' (*In re Masching*, 41 Cal.2d 530, 532 [261 P.2d 251]); the denial of a defendant's request for a continuance and ordering a trial to commence at once amounted to a denial of his constitutional right to counsel (*ibid*, p. 534); ''the right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial'' (*People* v. *Lanigan*, 22 Cal.2d 569, 575 [140 P.2d 24, 148 A.L.R. 176]); a defendant in a criminal action is entitled to counsel (*In re McCoy*, 32 Cal.2d 73, 76 [194 P.2d 531, 11 A.L.R.2d 934]); a convict ''would be entitled to release on habeas corpus if he

could show that deprivation of counsel resulted in an unfair trial or in substance in no trial at all" (*In re Egan,* 24 Cal.2d 323, 337 [149 P.2d 693]); "the party accused shall have the right to . . . appear and defend, in person and with counsel" (Cal. Const., art I, § 13). Appellant says this right would be of little value if an accused could be forced to proceed without counsel *because he had a particular objection,* in a county where there are public defenders, *to have a public defender represent him.*

Now, in the first place, the substantive law announced in the cited decisions is well known and no one disputes it. Second, the facts of many of them are so alien to those at bar that they cannot support a rule that would entitle appellant to a reversal. Third, when the court assigned the public defender to represent appellant, the accused had at hand one of the best equipped law offices in the state to champion his cause. It has a corps of vigorous, learned, amiable.gentlemen who present their causes with force and intelligence. "Of course defendant's right to counsel does not include the right to postpone the trial of a case indefinitely and reject the services of the public defender while defendant, at his leisure, attempts to find ·counsel who will ˙serve without charge. . . ." (*People* v. *Adamson,* 34 Cal.2d 320, 332 [210 P.2d 13].) The Public Defender of Los Angeles County and his staff are exceptionally well qualified in defending criminal cases. (*Ibid.*) Where a person accused of crime refuses to be represented by the Public Defender of Los Angeles County, and demands that some practicing lawyer leave his private practice in order to defend such accused, the latter prefers to have cause for a grouch rather than a chance to defeat his accusers. Because there are thousands of lawyers in Los Angeles County who would gladly suffer much inconvenience rather than see the constitutional right of an accused violated, is no reason why a defendant should be privileged to dawdle with the trial court, to neglect for four weeks to obtain counsel, and then have his conviction reversed because he did not choose to be represented by the public defender.

The judgment and the order denying appellant's motion for a new trial are affirmed.

McComb, J., and Fox, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 25, 1955.