[Crim. No. 3255.    First Dist., Div. One.    Apr. 23, 1957.]

THE PEOPLE, Respondent, v. ROY A. ROGERS, Appellant.

Roy A. Rogers in pro. per., and Gordon K. Williams, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and William M. Bennett, Deputy Attorney General, for Respondent.

PETERS, P. J.—Defendant, an attorney, was charged with five counts of grand theft, each count being based on the

charge that by false pretenses he took money improperly from his law clients. He was tried by the court without a jury, and was found guilty on three of the five counts. He appeals from the judgment of conviction, and from the order denying his motion for a new trial. He makes no attack on the sufficiency of the evidence. His sole contention is that, because of his health, and because he had no attorney, the trial court, as a matter of law, abused its discretion in compelling him to go to trial over his objections, and in refusing him a continuance.

The trial court, between August 18, 1955, and March 12, 1956, granted him 13 continuances, all based on the claim of his ill health. Defendant was present in the courtroom on three of these occasions. The circumstances surrounding each continuance can be summarized as follows:

*August 18, 1955*: Defendant present in court and arraigned. He waived the right to be tried in 60 days. At the request of his then counsel, ''in view of defendant's physical condition,'' the case was continued to September 7, 1955.

*September 7, 1955*: No appearance by or for defendant, and the matter was continued to September 12th.

*September 12, 1955*: Defendant's then counsel told the court that defendant was ill, and offered a certificate from defendant's doctor to the effect that defendant was suffering from diabetes, complicated by a heart condition. The case was continued to September 19, 1955.

*September 19, 1955*: The then counsel for defendant requested a continuance and told the court that defendant was still ill, but ''in probably another ten days they expect that he will be able to get around and probably be able to come to court at that time.'' A continuance was granted to September 30, 1955.

*September 30, 1955*: The then counsel for defendant told the court that defendant was in the hospital and would be incapacitated for at least two weeks. Case continued to October 10, 1955.

*October 10, 1955*: The then counsel for defendant offered a certificate from defendant's doctor stating that since September 27, 1954, defendant had been under treatment for ''hypertension and diabetes, complicated by a heart condition,'' and that defendant would be released for normal activity on about October 22, 1955. The prosecuting attorney requested that the court appoint a doctor to examine defendant. The trial court granted this request and continued the case to October 24, 1955.

*October 24, 1955*: The trial court read from a letter from the court-appointed doctor stating that defendant probably had not had a heart attack, but had diabetes and bursitis. He also stated that satisfactory treatment was difficult. The case was continued to November 7, 1955.

*November 7, 1955*: The then counsel for defendant referred to another doctor's certificate and requested another continuance. The case was continued to December 7, 1955.

*December 7, 1955*: The then counsel for defendant read from a letter from defendant's doctor stating that since the doctor's previous examination defendant had "suffered an exacerbation of his diabetic condition," and that, in his present condition, it was "imperative that he be kept at home, and at rest, to prevent any aggravation to his coronary disease." The case was continued to January 15, 1956 (a Sunday).

*January 16, 1956*: The then counsel for the defendant requested another continuance. The prosecuting attorney consented, but requested that a court-selected doctor be appointed to examine the defendant. Both requests were granted, and the case continued to January 23, 1956.

*January 23, 1956*: The trial court read a portion of a letter from the court-appointed doctor to the effect that the doctor had been unable to contact the defendant for the purpose of examining him; that he could not reach defendant by telephone or by visits to his home, where he was supposed to be confined. Defendant's then counsel stated that he intended to move for permission to withdraw as defendant's counsel because "I can't talk to him or get any cooperation from him either." The case was continued to January 26, 1956.

*January 26, 1956*: The court read from a letter from the court-appointed doctor which stated, in part, that the defendant "is completely disabled physically and is unable to stand trial." The case was continued to January 31, 1956, so that the doctor could be orally examined.

*January 31, 1956*: Defendant was present. His then counsel was not present, but pursuant to his formal request to withdraw, such permission, with the consent of defendant, was granted. The district attorney offered to produce witnesses to substantiate his assertions that during January, 1956, defendant conducted his legal business, and drove his automobile. The court-appointed doctor testified that his examination disclosed that defendant had a rapid heart, an enlarged and tender liver, diabetes, and was in a state of partial decom-

pensation. If the diabetes could be controlled, the heart and liver condition would improve. He first estimated that if defendant followed the prescribed treatment he would be able to stand trial in 60 to 90 days, and a little later testified that he could be tried in one or two months. It was his view that defendant should not practice law until his condition improved. The doctor stated that some of the symptoms could be feigned, and that defendant was probably not cooperating with his own doctor in taking care of the diabetes. It was his opinion that, if the defendant did not follow his doctor's orders, he would never be able to stand trial. He opined that treatment with digitalis, which he was not then taking, might so improve the heart condition that he could stand trial in about a month or two months. The doctor stated that the defendant's physical condition was up to him and his doctor, and that if he cooperated in keeping the diabetes under control he could stand trial. The prosecuting attorney summarized the long delay, objected to further continuances, and recommended that a definite date be set for trial. The court warned defendant that he must secure new counsel, which defendant promised to do, and set March 12, 1956, as the definite date of trial. Defendant was warned that if a continuance were requested beyond that date the burden would be on him, and that if another continuance was requested, defendant's doctor must be present for cross-examination, and notice in writing must be given of such request sufficiently in advance so that the prosecuting attorney could prepare a defense.

*March 12, 1956*: Defendant was not present when the case was called at 10 a.m. but a new lawyer representing defendant was present. He informed the court that defendant did not have regular counsel and that he was appearing specially for the sole purpose of moving for another continuance because of the illness of the defendant. The doctor for defendant testified that he had examined defendant that very morning and found him suffering from a "severe uncontrolled diabetes, essential hypertension, severe arterioscleroses, obesity, and a hemorrhage into the right sclera," that is of the eye. The doctor testified that until March 9th defendant "was getting along fairly well," but on the 10th defendant's diabetes was "uncontrolled again," and he was very nervous. The doctor had ordered him to bed, and was of the opinion that defendant was in no condition to stand trial that morning, but that the diabetes could be "readily controlled in a period of 30 days,

with cooperation." The doctor stated that for the past two months defendant had been a cooperative patient, but a little later admitted that defendant was obese and had not lost weight, which would indicate that he was not following the prescribed diet. On the morning of March 12th defendant was ambulatory because he had come to the doctor's office and was in condition to drive a car and to walk up stairs. The doctor had no way of knowing whether the prescribed dosage of insulin was being taken, and he admitted that a failure to take the insulin could have caused defendant's present physical condition, and also stated that tension in anticipation of the trial was a factor.

The prosecuting attorney requested that defendant be compelled to present himself at the court that day. After some discussion the bail bondsman was contacted and he agreed to surrender the defendant at 11 a.m. that morning. Defendant appeared shortly after 11 a.m. He stated that, because of his illness, he had been unable to secure counsel, that he was attempting to do so, and requested a continuance. The court pointed out that the request for a continuance by special counsel had already been denied, ascertained that defendant was an attorney, and ordered that the trial proceed. Defendant stated that "I object to the proceeding in the absence of counsel and in view of my condition." The defendant then waived a jury trial, and asked that the record show that he had no records with him. He later, however, offered various exhibits for identification.

For the balance of that day and for the next two succeeding days the defendant conducted a vigorous defense. He offered numerous objections to testimony, many of which were sustained. He conducted effective cross-examination. Twice the trial judge commented on defendant's competence. On the afternoon of the first day of the trial, when the court suggested a 4:30 p.m. adjournment, the defendant offered to continue until 5 p.m., an offer that was not accepted. When the court asked defendant if he would be present the next day, with or without counsel, the defendant replied: "I will be here. I have started this; I will finish it." On the second day of trial defendant continued his vigorous defense, as he also did on the third day of the trial. At the conclusion of the third day of trial defendant stated that there were quite a few questions that he wanted to ask one of the prosecution's witnesses.

On the morning of the fourth day of trial defendant asked leave to file a medical certificate and, based thereon, requested

a continuance. The court commented on the fact that defendant's doctor had not been produced for examination, suggested that defendant should have filed a writ in the appellate court, and then stated: ''I have been in and out of the courts for 35 or 40 years, and I have never seen anybody handle themselves any better than you have handled yourself during the course of this trial, with the exception of yesterday; your voice was affected. . . . I have commented to numerous people about what I considered the ability you displayed in handling the case.'' The court, after reviewing the past history of the case, denied the motion for a continuance. Thereupon defendant stated that he was not in a ''position to cross-examine'' the witness who was then under direct examination. Nevertheless, he did cross-examine the witness. The direct examination covers four pages of transcript, and the cross-examination covers six pages. Defendant then stated to the court that ''I don't think I can go on, Your Honor. I have these blackouts from insulin.'' The court then declared a recess (for an hour and a half) and appointed a doctor to examine defendant. The doctor testified that he had examined defendant and ''The results of my examination led me to the conclusion that this man may have had his difficulty being precipitated this morning by using a large dose of insulin without covering it with an adequate breakfast. This tends to produce a situation called an insulin shock.'' Defendant, when the doctor examined him, had ''no unusual reflex changes; his heart sounds were good; his blood pressure, for him, was within normal limits.'' The doctor had given the defendant some sugared orange juice, and believed that he no longer was in insulin shock. Moreover, the doctor had discovered some discrepancies in defendant's symptoms which were not compatible with a state of insulin shock. He had discussed the case with defendant's doctor who stated that defendant was ''not a very cooperative diabetic patient; that he has been on reducing diets without any satisfactory response. And this, of course, must come from the fact that the diet is not well adhered to.'' The doctor was positive that the defendant then (shortly after 11:30 a.m.) was not in insulin shock, and that within a couple of hours could continue with the trial, but that it was important that defendant eat a normal lunch because he still ''has a large supply of insulin in his system that needs to be covered.'' The bail bondsman offered to take defendant and his son to lunch, but when he could get no response from defendant, surrendered defendant into custody, and a recess until 1:30 p.m. was

taken. After the noon recess the court admitted into evidence some People's exhibits, and the prosecution rested its case. The defendant was told that he could proceed. He replied that he could not, that "I am too sick. I can't even see. My vision is blurred. I can't see." On his own motion the trial judge then admittted the exhibits previously offered by defendant, and stated: "I take it, Mr. Rogers, that you rest, if you are offering no defense?" There was no response, and the court declared: "The matter may be submitted."

The prosecution then presented the jailor who had had custody of defendant during the noon recess. He testified that the defendant ordered a normal lunch, but refused to eat anything, stating: "I can't; I am too sick." The court thereupon found the defendant guilty of three counts of grand theft and not guilty on two of the counts charged.

Before discussing the legal points involved there are certain other facts that should be mentioned. During the four-day trial defendant made several requests for a continuance. He made one such request after the noon recess on the first trial date, also asking that the court appoint a doctor to examine him and a lawyer to represent him, because his own counsel "can't be here until tomorrow or the next day." A short time later the judge noticed a lawyer in the courtroom and appointed him to represent defendant. This lawyer was permitted to withdraw when it developed that he had been a member of the district attorney's staff at the time defendant was indicted. The public defender also declined to represent defendant because defendant had sufficient assets to disqualify him for such aid.

Again, on the third day of the trial, just before the noon recess, defendant moved for a continuance because of his failing voice. After two hours, the trial proceeded, defendant stating that he could not raise his voice. The record shows, however, that he was quite active the balance of that afternoon.

Defendant does not challenge the sufficiency of the evidence. His sole contentions are that because of his illness he was not "present" at the trial, and that also, because of his illness, the failure to secure counsel between January 31st and March 12th, was excusable.

Article I, section 13 of the state Constitution, provides: "In criminal prosecutions, in any court whatever, the party accused shall have the right . . . to appear and defend, in person and with counsel. . . ."

Penal Code, section 1043, which implements the constitu-

tional provision, provides: "The defendant must be personally present at the trial; provided, that in case of a misdemeanor charge, if he absents himself with full knowledge that a trial is to be or is being had, the trial may proceed in his absence. If the defendant in a felony case fails to appear at any time during the course of the trial and before the jury has retired for its deliberations or the case has been finally submitted to the judge, and after the exercise of reasonable diligence his presence cannot be procured, the court shall declare a mistrial and the cause may be again tried."

In the case of *People* v. *Berling,* 115 Cal.App.2d 255 [251 P.2d 1017], it was held that in addition to physical presence the above section requires that the defendant be mentally present during the course of his trial. That was a murder case and it appeared that the defendant was at times during her trial "woozy," "dizzy," "not clear in her mental behavior," "not alert," "listless and apathetic," and suffered numerous fainting spells. In her affidavit for a new trial she averred that she was unconscious during most of the proceedings, recalled only occasional happenings in the courtroom, and had no recollection of certain conferences with her attorney. The appellate court noted 47 separate record references to her mental and physical condition, including many recesses granted for that reason, extending from a few minutes to five days. A physician testified that the condition was functional, being an emotional and nervous upset from strain. The trial judge made various remarks indicating that, in his opinion, the defendant was suffering from these conditions in good faith, and once "the district attorney called attention to . . . [defendant's] tired and worn appearance . . ." (P. 265.) The recesses were taken at the suggestion of the judge on most occasions; the defendant usually indicated her willingness to continue despite her condition. A woman deputy reported that defendant's condition was "very poor," that she seemed on "the verge of consciousness and that is all," and that "it is touch and go." (P. 266.)

The appellate court reversed defendant's conviction for the reason that "the conviction cannot be approved because of the violation of defendant's fundamental right to be physically and mentally present and fully conscious during all stages of the trial." (P. 272.) The court also stated (p. 267): "Frequent remarks by the trial judge to the effect that 'the defendant gives evidence of not being in a condition to proceed,' cannot but indicate that the court entertained serious doubts as

to whether appellant was conscious, semi-conscious, or unconscious during various phases of the trial. It is well to note that in the present case there appears to be no charge that Miss Berling was malingering. Indeed, appellant's condition was readily observable, not only calling forth comment from the trial judge but also from the deputy district attorney who openly questioned the advisability of continuing with cross-examination. That the situation was of an especially serious nature seems to have been recognized by everyone connected with the case."

The court interpreted the statutory provision involved as follows (p. 267) : "The only reasonable interpretation of the above requirement that a defendant be present at every stage of a felony prosecution is that the accused person must be both physically and mentally present. . . . An interpretation of the rule as requiring only physical presence would lead to such an absurdity as the purported trial of an imbecile or an insane person without the least understanding of what was taking place in the courtroom."

Defendant argues that the Berling case is here applicable, placing particular emphasis on his claim of a diabetic coma, resulting in a "blackout" on the last morning of the trial.

It should be noted that when defendant was summoned before the court on the morning of March 12th there is ample evidence in the record that, so far as his then physical and mental condition is concerned, he was in a fit condition to be tried. The record amply demonstrates that during the first three days of the trial defendant was physically and mentally able to and did handle his own defense. Therefore, so far as this point is concerned, the claimed error in refusing a continuance did not occur on March 12th, but occurred on the fourth day of the trial on March 15th. The evidence does show that on the morning of March 15th defendant was probably in a state of insulin shock, and it probably shows that he was still suffering from the effects of that shock on the afternoon of March 15th, when he failed to put on any defense to the prosecution's case. Was it reversible error to refuse him a continuance on that day? Is the rule of the Berling case applicable to the facts of this case? These are the questions we must answer.

This case differs fundamentally from the Berling case in that there was no evidence in that case that the mental condition there involved was self-inflicted, and there was no evidence of malingering on the part of the defendant. In the instant case there is substantial evidence that defendant's con-

dition was largely the result of his voluntary actions. There is ample evidence that long prior to March 12th defendant had failed to cooperate with his doctor or with his former attorney. The latter, in fact, was permitted to withdraw because of defendant's lack of cooperation. There is also substantial evidence that, if the defendant was in a state of insulin shock on March 15th, such condition was self-imposed. There is evidence that on the morning of March 15th he took a large dosage of insulin without covering it with breakfast. This, of course, would result in insulin shock. When defendant first complained of shock, the trial court declared a recess and appointed a doctor to examine defendant. This doctor testified that just before noon on that day, because of giving the defendant some sugared orange juice, he was no longer in insulin shock. Moreover, this doctor reported no unusual reflex changes and a good heart condition, and discussed various discrepancies in defendant's symptoms not compatible with a state of insulin shock. The doctor was definitely of the opinion that, after the noon recess, defendant could proceed but that it was important that defendant eat a normal lunch. The bondsman offered to take the defendant to lunch. This offer was not accepted. The jailer secured a lunch ordered by defendant but he refused to eat. Thus, the record shows that whatever condition defendant was in on the afternoon of the 15th was self-inflicted. It is a reasonable inference from the record that the state of affairs existing on that afternoon was intentionally brought on by defendant for the purpose of forcing a continuance. Thus, the issue is a more limited one than was involved in the Berling case. It is whether this voluntary "mental absence" of the defendant at the conclusion of his trial was a violation of defendant's constitutional and statutory right to be "present" when his case was tried. This, in turn, depends upon whether a defendant in a felony case can waive his right to be mentally present at his trial by voluntarily absenting his mental self after the trial has commenced.

The problem of waiver was not involved in the Berling case because there the condition was not self-imposed.

The majority rule in the United States is that in a noncapital felony case the accused is deemed to have waived his right to be physically present if he voluntarily absents himself after the trial has commenced. (See cases collected 14 Am.Jur. p. 905, § 199; 23 C.J.S. p. 309, § 975a; annotations 100 A.L.R. 480; Ann.Cas. 1913C, p. 1146.) This is the rule adopted by the United States Supreme Court. In *Diaz* v. *United States,*

223 U.S. 442, 455 [32 S.Ct. 250, 56 L.Ed. 500], it was held that where a defendant voluntarily absented himself from the courtroom after his trial has begun "this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present, and leaves the court free to proceed with the trial in like manner and with like effect as if he were present." The rationale of the majority rule is that, since the accused may waive any trial at all by pleading guilty, he may waive the procedural safeguards which are an incident of the trial.

There is, however, a minority rule to the effect that voluntary physical absence does not amount to a waiver of physical presence, and, it may be true that, by the adoption of section 1043 of the Penal Code, California has adopted the minority rule. But this does not mean that section 1043, under no circumstances, can be waived. There are other Penal Code sections that permit important steps to be taken in a felony case where the defendant voluntarily absents himself. Thus, under proper circumstances, a verdict can be received in the absence of the defendant (Pen. Code, § 1148), and judgment may, in a proper case, be pronounced in the defendant's absence (Pen. Code, § 1193). Moreover, although viewing the scene of a crime by the jury is in effect taking evidence, in *People* v. *Mathews,* 139 Cal. 527 [73 P. 416], it was held that the right of a defendant to be present at such viewing could be waived by a failure to request to be present. There are other cases holding that defendant's right to be physically present at his trial on a felony charge is not an absolute right, and that, if the proceedings taken in his absence did not prejudice him, it is not prejudicial error. (*People* v. *Isby,* 30 Cal.2d 879 [186 P.2d 405]; *People* v. *Trubschenk,* 134 Cal.App.2d 796 [286 P.2d 436]; see Pen. Code, § 1181, subd. 1.)

The fact that Penal Code, section 1043, is apparently mandatory in its language will not prevent a waiver in a proper case. There are many Penal Code sections, mandatory on their face, which have been held subject to waiver. Thus, section 686, subdivision 3, provides that a defendant is entitled "to be confronted with the witnesses against him." In *People* v. *Wallin,* 34 Cal.2d 777 [215 P.2d 1], it was held that this right could be waived. Section 1382 provides that the "court, unless good cause to the contrary is shown, *must* order the prosecution to be dismissed . . . [i]f a defendant, whose trial has not been postponed upon his application, is not brought to trial in a superior court within sixty days after the

finding of the indictment, or filing of the information. . . ." This section is subject to waiver by the failure of a timely assertion of the right. (*People* v. *O'Leary,* 130 Cal.App.2d 430 [278 P.2d 933].) ■ Penal Code, sections 654, 687 and 1023 imperatively provide that no person shall be twice put in jeopardy for the same offense, but again, the failure to raise the plea of once in jeopardy results in a waiver. (*In re Hess,* 45 Cal.2d 171 [288 P.2d 5].) ■ Another example of an apparently unconditionally guaranteed right, but one which is subject to waiver, is the right to a public trial. (Pen. Code, § 686, subdivision 1; *People* v. *Stanley,* 33 Cal.App. 624 [166 P. 596]; *People* v. *Tugwell,* 32 Cal.App. 520 [163 P. 508].) ■ And of course, the right to defend "with counsel" can be waived. (*People* v. *Justice,* 125 Cal.App.2d 572 [270 P.2d 859].) ■ A plea of guilty obviously waives the right to any trial at all. (*People* v. *Ryan,* 121 Cal.App.2d 651 [263 P.2d 850].)

■ Thus, there is ample authority for holding that a statute granting a right to an accused in categorical terms may be waived by the voluntary act of the person entitled. That is this case. The defendant, by his own actions, induced the condition existing in the afternoon of the fourth day of the trial. This amounted to a waiver of the right to be mentally present granted by section 1043 of the Penal Code. If this were not the rule, many persons, by their own acts, could effectively prevent themselves from ever being tried. A diabetic can put himself in insulin shock by simply taking insulin and then not eating, or by refusing to eat, or can disable himself by failing to take insulin. Surely, the Legislature in adopting section 1043 did not intend such an absurd result. Moreover, in the instant case there is some evidence that the claimed symptoms were feigned. The trial judge saw and heard the defendant. He heard the doctor's testimony. He could tell far better than we can tell from a cold record whether defendant was able to proceed.

For these various reasons it must be held that the trial court did not commit prejudicial error in refusing a further continuance on either March 12th or March 15th.

Defendant's only other argument is that failure to grant a further continuance deprived him of the opportunity of securing counsel in violation of due process and of article I, section 13, of the state Constitution.

Of course, the fact that defendant was himself an attorney did not affect his right to counsel. ■ A lawyer accused of

crime has the same right to counsel as other persons. (*People* v. *Napthaly*, 105 Cal. 641 [39 P. 29].) ▮ But this right may be waived, and such waiver can be found if the defendant is unduly dilatory. ▮ The matter largely rests in the discretion of the trial court, and the trial court's determination can be upset only in the event such discretion has been abused. (*People* v. *Davis*, 43 Cal.2d 661 [276 P.2d 801]; *People* v. *Adamson*, 34 Cal.2d 320 [210 P.2d 13]; *People* v. *Dowell*, 204 Cal. 109 [266 P. 807]; *People* v. *Flannelly*, 128 Cal. 83 [60 P. 670]; *In re Major*, 135 Cal.App.2d 405 [287 P.2d 359]; *People* v. *Simeone*, 132 Cal.App.2d 593 [282 P.2d 971].) ▮▮ Of course, if the uncontradicted evidence shows that defendant has been incapacitated and in bed for all but a short period between arraignment and trial, it is an abuse of discretion to deny him a continuance to secure counsel (*In re Masching*, 41 Cal.2d 530 [261 P.2d 251]) as it is where defendant was in jail and thus unable to secure counsel. (*People* v. *Robinson*, 42 Cal.2d 741 [269 P.2d 6].)

▮ But in the present case defendant knew on January 31, 1956, that the case was going to trial on March 12, 1956, and his failure to secure counsel in the interim was inexcusable. It must be remembered that a period of about eight months elapsed between the filing of the information and the trial. Moreover, defendant's first counsel was permitted to withdraw because defendant refused to cooperate with him. Defendant was ambulatory between January and March. It is also true, as pointed out in the discussion of the first point raised, that the condition defendant was in was largely self-imposed, and that for the first three days of the trial defendant conducted a capable and vigorous defense, a factor of some importance in determining whether there has been an abuse of discretion. (*People* v. *Dorman*, 28 Cal.2d 846 [172 P.2d 686].) Under these circumstances it was not error to refuse a continuance to allow defendant to secure counsel.

The judgment and order appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 19, 1957.