[No. F042072. Fifth Dist. Apr. 8, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
FREDRICK AVILA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

772

COUNSEL

David L. Saine, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Matthew L. Cate and Janis Shank McLean, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BUCKLEY, Acting P. J.—**

## INTRODUCTION AND GENERAL FACTS

On four days in February of 2002, defendant visited Lampe Lumber and charged merchandise totaling approximately $1,200 to the account of G and G Construction, a company owned by defendant's cousin, Fred Gonzales. Defendant was not authorized to charge merchandise on this account.[1]

Defendant was convicted after jury trial of four counts of second degree commercial burglary; the court found true one prior strike allegation and three prior prison term enhancement allegations. (Pen. Code, §§ 459, 1170.12, subd. (c)(1), 667.5, subd. (b).)[2] Defendant was sentenced to nine years' imprisonment.

---

[1] Defendant does not challenge the sufficiency of the evidence.

[2] Unless otherwise specified, all statutory references are to the Penal Code.

In the published portion of this opinion, we consider defendant's argument that he was suffering from such debilitating pain during the trial that he was "mentally absent," and therefore the trial court's refusal to suspend the proceedings was an infringement of various statutory and constitutional rights. As we will explain, this argument fails because the record does not show that defendant was unable to comprehend the nature of the proceedings or to assist counsel in his defense. The trial was conducted in a manner that reasonably accommodated defendant's special needs to the extent that this was practicable in light of courtroom security considerations and other legitimate constraints.

In the unpublished portion of this opinion, we explain that defendant's sentence is unauthorized because all of the enhancements were not imposed or stricken.

## DISCUSSION

I. *Issues Related to Defendant's Asserted Mental Absence/Incompetence*

### A. *Facts*

Trial commenced on the morning of August 19, 2002. A jury was selected. At 11:15 a.m., the court recessed. At 11:20 a.m., defense counsel requested a hearing in chambers. During this hearing, defense counsel stated that during the recess defendant had told him that "he is suffering from some sort of terrible throbbing headache that is affecting his ability to assist in his defense." Defense counsel said that defendant "apparently does have some medical documentation that he had some sort of a back problem or broken back." Defense counsel said that defendant told him that he had taken some medication immediately following jury selection. However, defendant's pain "has continued to get worse. He's advised to me when it happens in the past, sometimes he just—I think he simply collapses and passes out from the pain."

Defendant told the court that he had "broke[n]" his back in 1985. He had "slipped a disc and was in traction for two-and-a-half weeks. And I was supposed to have surgery and I refused it. [¶] Now that I'm older, it started really tearing me apart. I get these really bad headaches." He is "scheduled to see an orthopedic surgeon about a surgery to take a piece of bone off my hip and fuse the vertebra to lift it up and take the pressure off the disc." He said that he could not continue because "I got this real bad headache and everything is getting—my vision is not even there." He asked the court to postpone the trial "until I get better."

The trial court stated that defendant seemed "to be very articulate." It ruled that "a 17-year-old back injury" does not constitute "good cause to continue the case." However, if defendant chose, it would adjourn until 1:30 p.m. Defendant declined the court's offer, stating that he would "go until I can't go no more." The court replied, "You let your lawyer know, sir."

Thereafter, the attorneys made their opening statements and the first witness was examined before the court adjourned for lunch.

After the lunch break, defense counsel informed the court that defendant's headache had worsened. The court ordered the trial continued until the following morning so that defendant could rest. Prior to adjourning, the court asked defense counsel whether he had "been able to communicate with his client, as far as the first witness goes?" Defense counsel replied, "Yes, your Honor." Then the court asked defendant whether he had been "able to understand [the] first witness and help your lawyer[?]" Defendant replied, "Yes, sir."

When the court reconvened on the morning of August 20, 2002, defense counsel advised the court that defendant had informed him "that he was still in a great deal of pain." Defense counsel said that defendant told him that he had been examined "by some sort of nurse at the facility who had . . . identified some sort of back spasms, some sort of problem. And he was apparently referred to see the physician or physician's assistant . . . but he was brought to court before he had a chance to see the other medical personnel." Defense counsel stated that defendant told him that "due to the pain that he's in, he is not able to assist me in his defense." Defense counsel moved for a mistrial "given the fact that my client is in pain and that we don't know when he's going to get better."

Defendant said, "I have a disc that is no longer there, and the bones are crushed together. [¶] Oh, the pain is shooting down my legs. I'm having muscle spasms and it's giving me real bad headaches, dizziness, nausea." The court asked defendant if this was "unusual." Defendant said that he had been suffering pain and headaches for the past year. In response to the court's question whether the pain he currently was experiencing was different than the pain he had suffered a week or a month ago, defendant replied that the pain progressively is "getting worse and worse. That's why they referred me to a specialist." Defendant asked the court to delay the trial until he recovers from back surgery.

The prosecutor stated that she was concerned about resetting the trial because there was no guarantee "that this won't happen again. This is an injury that has occurred 17 years ago. This defendant has been in this pain for a year, yet he's done nothing for that until now that we're in trial."

The court ruled that it did not "disagree . . . that [defendant] is in pain, although it appears to me that he's quite [coherent], quite lucid, and able to communicate with his attorney. It is unfortunate that he's experiencing pain, but I don't think that pain is sufficient that I should declare a mistrial in this particular case."

Trial was completed that day without any further complaint concerning defendant's health. The defense did not call any witnesses and defendant did not testify.

On October 15, 2002, defendant moved for a new trial on the ground that he was "mentally" absent from trial and unable to assist defense counsel due to the "tremendous physical pain" that he was experiencing at that time. In support of this motion, defendant proffered a one-page report, dated July 11, 2002, which set forth the results of X-rays that had been taken of defendant's thoracic and lumbar spine (the X-ray report). The X-ray report stated that "[t]here is grade one (about 10 mm) forward spondylolisthesis at L4-L5. Moderate degenerative narrowing of L4-L5 disk interspace also noted. There appear[s] to be bilateral pars interarticularis (spondylolysis) defects at the L4-L5 level."[3] Defendant also proffered a Department of Corrections form (the form) dated October 6, 1999, assigning him to "restricted/light duty" because of "Arthritis both knees/s/p broken back."

The new trial motion was considered on November 21, 2002. Defendant testified that he had been unable to assist defense counsel during the trial "[b]ecause of the pain in my head." Defendant said that he "wasn't in the right state of mind. And I couldn't think straight." This pain prevented him from telling defense counsel that he wanted to dismiss a prospective juror who had been the victim of a residential burglary. He said, "[d]ue to the fact I had the pain in my head and not thinking straight, [this juror] slipped by." Also, defendant said that he had forgotten to mention unspecified legal issues that he previously had researched. In response to the prosecutor's query how long defendant had suffered from "these pains," defendant replied "[s]ince about the mid '90's."

---

[3] Spondylolysis is "[t]he breaking down (dissolution) of a portion of a bony building block of the spine (a vertebra). [¶] The portion of the vertebra that is affected in spondylolysis is a bone segment called the pars interarticularis (which is part of a plate which is located, in technical terms, between the superior and inferior articular processes of a lumbar vertebra). In spondylolysis, there is separation of the pars interarticularis." (http://www.medterms.com/script/main/art.asp?ArticleKey=7206 [as of Apr. 8, 2004].) Spondylolysis can cause "abnormal movement of the spine (called spondylolisthesis) and lead to localized back pain." (*Ibid.*)

The trial court ruled as follows:

"[M]y feeling is I watched the defendant carefully, both at the trial and at subsequent hearings. And I've seen a lot of people with bad backs. And I don't disagree with the defendant that his back may be in pain, but he certainly doesn't walk particularly like he has a bad back. He has been coherent and made cogent remarks throughout these proceedings. [¶] My belief is that this defendant, when he went into the store and committed this crime, there was really no defense to this case. And he may have a bad back like many people in this court may have a bad back, but there's no medical evidence other than the defendant's own testimony. [¶] And I believe and I'll make the finding: Defendant's perfectly capable of helping his—assisting his counsel during the pendency of those proceedings, so the motion for a new trial is denied."

> B. *The trial court did not err by refusing to grant a mistrial or an extended continuance or by failing to order a competency hearing*

█ Trial in the accused's absence is a general due process violation and an infringement of the accused's constitutional and statutory right to appear and defend in person. (Cal. Const., art. I, § 15; Pen. Code, § 1043; *People v. Rogers* (1957) 150 Cal.App.2d 403, 410–411 [309 P.2d 949]; *People v. Guillory* (1960) 178 Cal.App.2d 854, 858–859 [3 Cal.Rptr. 415].) "The only reasonable interpretation of the . . . requirement that a defendant be present at every stage of a felony prosecution is that the accused person must be both physically and mentally present. Mere physical presence without mental realization of what was going on would obviously be of no value to the accused. A defendant in such condition would be unable to confer with or assist counsel, unable to testify, and without ability to understand the nature of the accusation or the mechanics or consequences of the trial." (*People v. Berling* (1953) 115 Cal.App.2d 255, 267 [251 P.2d 1017] (*Berling*); *People v. Williams* (1961) 194 Cal.App.2d 523, 525–526 [15 Cal.Rptr. 191] (*Williams*).) █ Therefore, a trial court does not possess discretion to proceed with trial while the accused is not mentally, as well as physically, present. (*Berling, supra,* 115 Cal.App.2d at p. 270.) Illness of the defendant constitutes good cause sufficient to grant a motion for a mistrial or a request to continue the trial. (*Curry v. Superior Court* (1970) 2 Cal.3d 707, 713–714 [87 Cal.Rptr. 361, 470 P.2d 345]; cf. *People v. Logan* (1854) 4 Cal. 188, 189.)

Similarly, "[a] defendant is incompetent to stand trial when he suffers a mental disorder or developmental disability rendering him 'unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.' [Citations.] As a matter of due

process, the trial court is required to conduct a section 1368 hearing to determine a defendant's competency whenever substantial evidence of incompetence has been introduced. [Citations.] Substantial evidence is evidence that raises a reasonable doubt about the defendant's competence to stand trial." (*People v. Frye* (1998) 18 Cal.4th 894, 951–952 [77 Cal.Rptr.2d 25, 959 P.2d 183] (*Frye*).) Trial of incompetent individuals infringes their due process guarantee, as well as "other state and federal constitutional rights, including the rights to a fair trial, trial by jury, confrontation and cross-examination, presentation of a defense, effective assistance of counsel, equal protection, and reliable . . . verdicts as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and their California counterparts, article I, sections 7, 15 and 17." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1063 [119 Cal.Rptr.2d 859, 46 P.3d 335].)

■ A defendant is constitutionally entitled to a hearing under section 1368 if he has come forward with substantial evidence of present mental incompetence. (*People v. Cox* (1978) 82 Cal.App.3d 221, 225–226 [147 Cal.Rptr. 73].) However, "[r]eviewing courts give great deference to a trial court's decision whether to hold a competency hearing. ' " 'An appellate court is in no position to appraise a defendant's conduct in the trial court as indicating insanity, a calculated attempt to feign insanity and delay the proceedings, or sheer temper.' " ' " (*People v. Marks* (2003) 31 Cal.4th 197, 220 [2 Cal.Rptr.3d 252, 72 P.3d 1222].)

Defendant asserts that he was not mentally present during trial because his cognitive faculties were so impaired by the painful physical conditions from which he was suffering that he could not concentrate on the proceedings or communicate with defense counsel. Alternatively phrased, the pain he was experiencing during trial rendered him incompetent. Defendant suggests three alternative courses that he believes the trial court properly could have pursued, all of which involve suspension of the trial: (1) the court could have granted defense counsel's request for a mistrial; (2) it could have granted an extended continuance for medical evaluation and treatment; (3) it could have declared a doubt concerning defendant's competence and ordered the trial to be suspended and a hearing to be conducted pursuant to section 1368 et seq. Failure to pursue any of these courses is claimed to be an abuse of discretion and to have resulted in infringement of defendant's statutory rights and constitutional protections.

We must make the same assessment and determination, regardless whether we consider defendant's claim in the context of "mental absence" pursuant to section 1043 or "incompetence" pursuant to 1368: does the record support defendant's contention that he was unable to comprehend the nature of the proceedings or to assist counsel in his defense? (See *Williams, supra,* 194

Cal.App.2d at pp. 525–526.) We answer this question in the negative. As will be explained, the record fully supports the trial court's determination that although defendant was experiencing pain, he was "[coherent], quite lucid, and able to communicate with his attorney." Defendant's demeanor and conduct during trial and the surrounding circumstances all support the trial court's conclusion regarding defendant's mental condition. Defendant was both "present" and "competent" within the meaning of the law.

Cases in which the accused was determined to be "mentally absent" from trial are rare and involve extreme situations. For example, in *Berling, supra,* 115 Cal.App.2d 255, the record was replete with evidence that appellant was in a general state of collapse during the trial. She repeatedly lost consciousness and was only semiconscious during much of the trial. Numerous recesses and a five-day continuance were necessary because of her condition. Both the trial judge and prosecutor questioned the advisability of continuing. No charge was made that defendant was malingering. "That the situation was of an especially serious nature seems to have been recognized by everyone connected with the case." (*Id.* at p. 267.) Based on these egregious facts, the appellate court determined that she had been mentally absent during the trial.

In *Williams, supra,* 194 Cal.App.2d 523, the reviewing court characterized the appellant's condition as follows: "the actions of the [appellant] leading up to his arrest, his comments during the course of the trial, and his testimony in his own behalf can only be described as so completely incoherent and irrational as to lead to but one conclusion: that [the appellant] had little, if any, touch with reality and quite obviously was unable to assist counsel in his defense." (*Id.* at p. 524.) After the verdict was returned, the trial judge suspended the proceedings because he was not " 'satisfied in [his] own mind as to the mentality of the [appellant].' " (*Ibid.*) The appellant was found insane and committed for two years. When he was certified as a sane person, the trial proceedings recommenced. He moved for a new trial on the ground that he had been insane during the time of the trial. Based on the unequivocal evidence of insanity, denial of the new trial motion was held to be an abuse of discretion because the appellant was not mentally present and because his conduct " 'cast grave doubt on his sanity.' " (*Id.* at p. 526.)

Unlike *Berling* and *Williams,* the record in this case does not contain evidence showing that defendant was irrational or incoherent or that he was in such a general state of collapse that he suffered periods of unconsciousness or semiconsciousness. On the contrary, the record shows that defendant was alert and coherent during the proceedings. Defendant responded appropriately to all of the judge's questions. Prior to granting the continuance on August 19, the court received assurances from defense counsel and defendant that defendant had understood the first witness and that he had been able to assist

with his defense. There are no recorded incidents in which defendant lost consciousness, fainted, or fell while in the courtroom, holding cell or other secure environment. There is no evidence that the unspecified medication defendant ingested on the first morning of trial substantially altered or impaired his perception of reality or his ability to effectively interact in the courtroom environment. No documentary or testimonial evidence was produced supporting defendant's statements concerning his physical, mental or emotional condition.[4] Defendant was seen by a health professional on the afternoon of August 19. No evidence was presented on the following day indicating that this professional deemed defendant in urgent need of immediate medical treatment or that this professional considered defendant unfit to continue trial. That defendant may have been somewhat distracted by pain and other symptoms of physical distress does not establish incompetence or mental absence. (Cf. *Frye, supra,* 18 Cal.4th at p. 952 [testimony that the defendant could not tolerate stressful situations and might not retain information long enough to properly testify on his own behalf did not prove incompetence].)

Defense counsel's opinion concerning his client's mental state is not conclusive. A trial court is not required to order a competency hearing "based merely upon counsel's perception that his or her client may be incompetent." (*People v. Welch, supra,* 20 Cal.4th at p. 739, fn. 7; *Frye, supra,* 18 Cal.4th at p. 953.) Although statements of counsel are "to be given serious consideration, there is no good reason why it should control over other circumstances which the court may take into consideration." (*People v. Dailey* (1959) 175 Cal.App.2d 101, 108 [345 P.2d 558].)

The instant case is somewhat comparable to *People v. Dailey, supra,* 175 Cal.App.2d 101. There, the reviewing court upheld denial of a request for a hearing on the issue of the appellant's sanity, explaining, "There appeared to be no lack of cooperation with his counsel, nor lack of understanding of the proceedings. He recalled the events of the crime and clearly stated them on the witness stand." (*Id.* at p. 109.) Likewise here, there is no indication in the record that defendant could not understand the nature of the proceedings or cooperate with defense counsel. While defendant in this case elected not to testify, there is no indication that he was not capable of doing so had he desired.

---

[4] We review the correctness of the trial court's ruling at the time it was made and not by reference to evidence produced at a later date. (*People v. Welch* (1999) 20 Cal.4th 701, 739 [85 Cal.Rptr.2d 203, 976 P.2d 754].) Since the X-ray report and the form were proffered in support of defendant's new trial motion, they are not relevant to an assessment of the propriety of rulings that were made during trial. The evidentiary value of these documents will be assessed when we address the argument that denial of the new trial motion was an abuse of discretion.

Furthermore, adoption of defendant's position renders individuals suffering from chronic ailments or painful infirmities essentially immune from criminal prosecution. This would be untenable. A court "cannot restore sight to the blind, hearing to the deaf or speech to the mute. [It] need only give such aid to intelligent appreciation of the proceeding as a sound discretion may suggest." (*People v. Guillory, supra,* 178 Cal.App.2d at p. 861; see also *People v. Freeman* (1994) 8 Cal.4th 450, 478–480 [34 Cal.Rptr.2d 558, 882 P.2d 249].) In this case, defendant said that he was suffering the effects of a back injury sustained in 1985 and stated that he had been experiencing back pain and headaches for the past year. Back pain is extremely common. Studies show that more than 70 percent of adults suffer back pain at some time in their lives, and one-third have experienced it in the past 30 days. (Kolata, *Healing a Bad Back is Often an Effort in Painful Futility,* N.Y. Times (Feb. 9, 2004) <http://www.nytimes.com/2004/02/09/national/09BACK.html>.) There was no evidence before the court that the surgery defendant referenced in his remarks would cure his back pain and headaches. It is common knowledge that back injuries can cause chronic pain and that surgery does not always provide effective relief or cure. Experts agree that 10 percent of such cases are intractable. (*Ibid.*)

▮ In a situation such as this, where the defendant suffers from a chronic condition causing pain and associated symptoms but he or she is lucid, coherent and rational, the trial court is not obligated to suspend criminal proceedings. Rather, the proceedings are to be conducted in a manner that reasonably accommodates the special needs of the accused to the extent that this is practicable in light of courtroom security considerations and other legitimate constraints. (See, e.g., *People v. Freeman, supra,* 8 Cal.4th at pp. 478–480; *People v. Guillory, supra,* 178 Cal.App.2d at pp. 861–862.) The trial court fully satisfied this limited obligation. It behaved at all times in a considerate fashion. It took defendant's complaints seriously[5] and made reasonable accommodations consistent with recognition that defendant's pain had not rendered him mentally absent or incompetent.

For all these reasons, we reject the claim of constitutional and statutory error.

### C. *Denial of the new trial motion was not an abuse of discretion*

We now turn to the related question whether denial of the new trial motion was an abuse of discretion. (*Sherman v. Kinetic Concepts, Inc.* (1998) 67

---

[5] Thus, this matter is distinguishable from cases such as *People v. Rogers, supra,* 150 Cal.App.2d 403 at pages 412 to 416, and *People v. Cox* (1978) 81 Cal.App.3dSupp. 1 at pages 4 to 5 [146 Cal.Rptr. 724], where the reviewing courts determined that the appellants had impliedly waived their presence at trial because their impairments were self-imposed.

Cal.App.4th 1152, 1160–1161 [79 Cal.Rptr.2d 641] [trial judge granted wide discretion in ruling on new trial motion and this exercise of discretion is given great deference on appeal].) We answer this query in the negative because defendant did not sustain his burden of proof.

First, the documentary evidence proffered by the defendant did not establish that he was mentally absent or incompetent during trial. The form only tends to prove that defendant's back pain is not recent[6] and the X-ray report simply indicates that defendant may suffer from spondylolisthesis/spondylolysis and the disk space in his lumbar region may be narrowed. Since the judge had not indicated at trial that he believed defendant was a malingerer and did not treat him as such, this documentary evidence is not of significant probative value.

Second, defendant did not proffer any medical or psychiatric testimony supporting the proposition that spondylolisthesis/spondylolysis causes pain of such intensity that the individual has periods of irrationality, semiconsciousness or unconsciousness. Defendant errs by attempting to burden the court with an obligation to obtain evidence concerning the symptoms of his medical condition.

■ Finally, defendant's testimony concerning his mental impairment during jury selection was not credible. In fact, the trial record contradicts it. Defendant and his attorney both told the judge on the afternoon of August 19 that defendant had been able to understand the first witness and to assist counsel. Since defendant had reported that his pain was progressively worsening throughout the day, the trial court reasonably could infer from these averments that defendant had been able to understand proceedings conducted earlier that morning because his pain was less severe at that time. When assessing evidence produced in support of a new trial motion, the trial court may consider its credibility as well as its materiality. (*People v. Beyea* (1974) 38 Cal.App.3d 176, 202 [113 Cal.Rptr. 254].) The court was not required to accept defendant's self-serving testimony over its personal observations concerning defendant's lucidity and behavior.

In sum, we agree with the Attorney General that "[t]he trial court's determination that appellant was able to participate in his defense was supported by the record. The court fully articulated the reason for its ruling, the decision was entirely reasonable, and there was no abuse of discretion."

---

[6] In his opening brief, defendant's appellate counsel writes that the form shows that defendant was prescribed codeine and Motrin. Counsel is wrong. The form actually indicates that defendant had reported an allergy to Motrin, Tylenol and codeine.

II. *Sentencing Issues*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment of conviction is affirmed; the matter is remanded for resentencing.

Cornell, J., and Dawson, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 23, 2004.

---

[*]See footnote, *ante*, page 771.