Filed 1/30/23  P. v. Barrera CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BRENDA ESTEFANIA BARRERA,<br><br>    Defendant and Appellant. | F080953<br><br>(Super. Ct. No. CRF46999 )<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tuolumne County.  James A. Boscoe, Judge.

Ortiz Law Group and Jesse Soto Ortiz for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Brenda Estefania Barrera crashed a car into incoming traffic, killing one person and significantly injuring three others.  A short while later, officers investigating the crash believed Barrera was under the influence of drugs.  She was arrested and later charged with murder and related crimes.  A jury convicted her as charged.

On appeal, Barrera raises six claims. One, was the evidence sufficient to prove the convictions? Two, did the court properly admit evidence regarding Barrera's prior drug use? Three, did the court properly remove a juror after the trial started? Four, was an expert witness's testimony properly admitted? Five, did the court err in permitting the prosecution's rebuttal evidence over an objection pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*)? Six, are any errors cumulatively prejudicial?

We find no prejudicial error. The judgment is affirmed.

## BACKGROUND

**Charges**

The Tuolumne County District Attorney charged Barrera with four crimes: murder (Pen. Code,[1] § 187; Count I), gross vehicular manslaughter while intoxicated (§ 191.5; Count II), driving while intoxicated and causing injury (Veh. Code, § 23153, subd. (e); Count III), and driving with a suspended driver's license (Veh. Code, § 14601.4, subd. (a); Count IV). Count III included enhancements for causing great bodily injury (§ 12022.7, subds. (a) & (c)).

**Trial Evidence**

On April 21, 2015, a driver called 911 to report an "erratic" driver. Another driver told his wife to call 911 for the same reason. He believed the driver was " 'going to kill somebody ….' "

A third driver activated a camera after witnessing another car "go" off "the road" and it "didn't look right." On the video, the driver states, "[Y]ou've got to be kidding me" because it "looked like [the other car] was going to pass on [the] side of the road …." Instead, the car went "from the right-hand side" "into [] oncoming traffic" and collided with another vehicle. In the other car, one person died and three others suffered serious injuries.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

2.

A law enforcement officer responded to the "head-on collision," determined Barrera was driving the car, and caused the collision by "fail[ing] stay on the right half of the roadway." The officer believed Barrera was "driving under the influence of alcohol or drugs" based on "multiple witness[es] saying that she was driving very erratically, the [collision] itself, and [her] objective symptoms …."[2]

A second law enforcement officer performed a "drug recognition evaluation" on Barrera. It is a "12-step process" designed to "determine … whether or not the individual has an impairment or shows impairment, … whether that impairment is [] medical-related or [] drug-related[,] [a]nd, … if drug-related, … what drug category [] is" involved.

The drug recognition evaluation revealed the following facts: Barrera's "speech was slow and mumbled," she was "lethargic," her coordination was "[s]low," her eyes were "bloodshot," "[h]er eyelids appeared droopy," her pulse was "above normal," her eyes exhibited "nystagmus,"[3] and her tongue had "a brown coating … and a couple of heat bumps …." Barrera's tongue was consistent with "recent ingestion or smoking," especially "smoking something out of glass." The officer believed Barrera was "under the active influence of a central nervous system depressant or … marijuana." Barrera's blood was drawn for testing.

Later, Barrera's purse was searched, revealing "two black containers that had an odor of marijuana emitting from them" and "a glass smoking tip …." Barrera stated she used the glass "to smoke blunts …."

---

[2] Yet another driver reported witnessing Barrera veering off the road either "three or four times" or "eight to ten times …." The objective signs included "bloodshot eyes and slow and heavy speech." Barrera also exhibited "nystagmus," discussed in greater detail *post.* Nystagmus indicated "it's possible that she[ was] under the influence of alcohol or some type of depressant …."

[3] Nystagmus is "involuntary jerking of the eye[s]." Nystagmus is "sort of an indicator of alcohol in the body or drugs, like depressants and things like that."

An expert witness tested Barrera's drawn blood and explained it was consistent with consuming "alprazolam"[4] and marijuana. The test could not establish "how much" or "when" the substances were consumed. Alprazolam is "a central nervous system depressant." The expert believed a hypothetical person similar to Barrera, based on "bad driving pattern," objective "signs and symptoms," and blood test results, was "consistent with being … under the influence and impaired with … alprazolam and marijuana." The expert acknowledged many of Barrera's signs and symptoms were consistent with fatigue, but added using marijuana or alprazolam while tired would only amplify fatigue.

Barrera testified she was previously arrested for and charged with driving under the influence. She later pled "guilty." Prior to the collision in this case, she was "tired, rushing, trying to pass cars." She did not consume alprazolam but did smoke "[b]etween three and four" "blunts" the night before the collision.[5] She was not impaired by either alprazolam or marijuana, but had taken alprazolam "in the past …."

**Verdict and Sentence**

The jury found Barrera guilty of murder and driving while intoxicated and causing injury (Counts I and III). The great bodily injury enhancements were found true. The jury found her not guilty of gross vehicular manslaughter while intoxicated (Count II).[6] Barrera previously admitted to driving with a suspended license.[7] She was sentenced to serve 28 years to life in prison.

---

[4] Alprazolam is commonly known as Xanax.

[5] The collision occurred around 10:00 a.m.

[6] The jury was instructed to find Barrera not guilty in Count II if it found her guilty in Count I.

[7] The record is imperfect on this point. In our prior opinion, we noted, "[p]rior to trial, Barrera admitted" to Count IV. (*People v. Barrera* (Jan. 9, 2019, F074032) [nonpub. opn.].)

## DISCUSSION

This appeal presents six questions. Did the evidence sufficiently prove Barrera committed either crime? Did the court err in admitting evidence Barrera habitually used marijuana and previously used alprazolam? Did the court err in dismissing a juror after the parties presented opening statements? Did the court err in allowing the expert witness to testify about nystagmus testing? Did the court err in permitting certain impeachment evidence, namely evidence taken in violation of Barrera's right against self-incrimination? Are any errors, if not individually prejudicial, cumulatively prejudicial? We find no reason to reverse the judgment.

### I. The Evidence Sufficiently Proved Each Crime

In challenging the convictions, Barrera claims the evidence insufficiently proved "she was under the influence."[8] The People assert "[s]he is incorrect." We find the evidence sufficient to prove Barrera was under the influence.

"Upon a challenge to the sufficiency of evidence for a jury finding, we ' " ' "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence — that is, evidence which is reasonable, credible, and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " ' " (*People v. Rivera* (2019) 7 Cal.5th 306, 323.) "We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27 (*Lindberg*).)

---

[8] We confine our analysis to this point.

The following facts prove the jury could justifiably find Barrera guilty beyond a reasonable doubt. Barrera admitted to smoking marijuana prior to the collision, albeit significantly before the collision. Three witnesses trained in evaluating signs and symptoms related to driving under the influence believed Barrera was under the influence. Barrera's tongue indicated she recently consumed marijuana. Indeed, she possessed empty containers[9] and paraphernalia consistent with recently consuming marijuana. Her blood tested positive for consuming marijuana and alprazolam.

Three eyewitnesses were concerned with Barrera's ability to drive a car. Two called 911 and the other activated a video camera. One eyewitness believed Barrera was " 'going to kill somebody' " and another audibly gasps, "You've got to be kidding me," in reference to Barrera's inability to safely operate the car. Barrera then inexplicably crosses into oncoming traffic and slams into another car. Although she may have been tired, the expert explained consuming marijuana or alprazolam while tired only makes it worse. In other words, even if Barrera was tired, marijuana and alprazolam still impaired her ability to drive a car.

For all these reasons, the jury was entitled to find Barrera guilty of both crimes.[10] We reject the insufficient evidence claim.

## II. Prior Drug Use Evidence

Barrera claims the court violated Evidence Code section 1101, subdivision (a), by admitting two statements from a third party about Barrera's drug-use history. Specifically, one statement was that Barrera "smoked [marijuana] whenever she can get her hands on it." The other statement was that Barrera "had used [alprazolam] … in the past …."

---

[9] As noted, these containers "had an odor of marijuana emitting from them."

[10] Barrera claims much of the evidence "was impeached, inherently improbable, conflicting and inherently suspect." We disagree with these contentions. (*Lindberg, supra,* 45 Cal.4th at p. 27.)

The People argue the marijuana statement was properly admitted and the alprazolam statement was not prejudicial.[11] We agree.

## A. Additional Background

Prior to trial, Barrera moved to exclude a third party's statements about Barrera's marijuana and alprazolam use.[12] The motion was based on Evidence Code section 1101, subdivision (a). Barrera's counsel argued the marijuana evidence was offered to show "Barrera smokes marijuana every day and, therefore, this jury should conclude that she smoked it on" the collision date.

As for alprazolam, counsel argued, "it's pure speculation. We don't know what the source of that information is."

The People countered both statements were "relevant." Relative to alprazolam, the People argued the statement was relevant to voluntary versus involuntary ingestion.

The court ruled, "So with respect to the marijuana use, I think I'm going to allow that. I'll deny your 1101 motion. I'll find it's permissible as evidence of habit, but pursuant to Evidence [c]ode [section] 1105." The court reserved ruling on alprazolam.

The following morning, the court ruled, "[W]e don't know the source of [the alprazolam] information. … [¶] The jury can draw whatever inference it wants about … the source of the information, but I'm going to allow" the testimony.

## B. Analysis

We agree the marijuana statement was admissible as habit evidence. We disagree the alprazolam statement was admissible.

---

[11] The People also claim Barrera forfeited this point by "fail[ing] to properly argue it in" her brief. We would ordinarily agree but believe it is important to nonetheless address the issue on the merits.

[12] The third party is Barrera's "son's father."

7.

### i. Marijuana

Evidence Code section 1105 states "[a]ny otherwise admissible evidence of habit or custom is admissible to prove conduct on a specified occasion in conformity with the habit or custom." " '[A] habit involves a consistent, semiautomatic response to a repeated situation.' " (*Briley v. City of West Covina* (2021) 66 Cal.App.5th 119, 138.) "The determination whether habit evidence is admissible rests in the sound discretion of the trial court." (*People v. Johnson* (2019) 8 Cal.5th 475, 518.) "We consider the correctness of the trial court's ruling at the time it was made." (*People v. Farley* (2009) 46 Cal.4th 1053, 1082; *People v. Avila* (2004) 117 Cal.App.4th 771, 780, fn. 4.)

We discern no abuse of discretion in the trial court's ruling. The statement Barrera uses marijuana whenever she can was admissible because it was supported by evidence she had recently consumed marijuana prior to the collision. At the time the court ruled, it knew the evidence indicated a blood test consistent with marijuana, containers and paraphernalia consistent with recent marijuana use, her tongue appeared consistent with recent use, and Barrera admitted she "smoked marijuana for the last seven years …."[13] Accordingly, the court's ruling to admit the evidence was not patently unreasonable. Barrera's argument fails.

### ii. Alprazolam

The People make no attempt to defend the court's ruling on the alprazolam statement. Indeed, the People acknowledge the court's stated reasoning was incorrect. We agree the court was incorrect but the error was harmless.

"Sometimes the relevance of evidence depends on the existence of a preliminary fact." (*People v. Lucas* (1995) 12 Cal.4th 415, 466 (*Lucas*); Evid. Code, § 403.) "The

---

[13] This statement was uttered in the jail "during the booking process[.]"

decision whether the foundational evidence is sufficiently substantial is a matter within the court's discretion." (*Lucas, supra,* 12 Cal.4th at p. 466.)

Here, the missing link is how the witness knew Barrera previously used alprazolam. If it was neither a personal observation nor an admission, the evidence is inadmissible. But there is no answer in the record. The court acknowledged as much in stating, "[W]e don't know the source of [the] information." The court should have excluded the evidence at this point but instead ruled "[t]he jury can draw whatever inference it wants about … the source of the information …." This is clear error.

Nonetheless, " '[w]hen evidence is erroneously admitted, we do not reverse a conviction unless it is reasonably probable that a result more favorable to the defendant would have occurred absent the error.' " (*People v. Young* (2019) 7 Cal.5th 905, 931.) This standard is not met.

There was no argument in this case Barrera did not know about alprazolam. In fact, she testified she used alprazolam "in the past …." There is no reason to believe her blood tested positive for alprazolam because it was involuntarily ingested.[14] For these reasons, there is no possibility Barrera would have achieved a more favorable result absent *other* evidence she had previously used alprazolam. The court's error was not prejudicial.

## III. The Juror Was Properly Dismissed

Barrera argues "the trial court erred by improperly discharging a juror …." The People oppose. We conclude the court did not err.

---

[14] We have considered the possibility Barrera testified she previously used alprazolam in response to the court's ruling to admit other evidence of that fact. We consider that possibility remote. In arguing to exclude this evidence, Barrera's counsel acknowledged, "There is no defense that she didn't know what [alprazolam] was. It's in her blood. It's there."

## A. Additional Background

After the parties delivered opening statements, a juror announced, "I need to speak to you." The court subsequently held a hearing "in chambers outside the presence of the jury." The juror revealed that "close family members … were in a major car accident based on distracted driving." The juror "hadn't made this connection" until after hearing opening statements. Nonetheless, the juror expressed, "I think maybe I can work through [this] based on the law."

The juror then explained, "I think I'll be able to work through [this] and make the right choice, but it's something that would weigh on me." Barrera's counsel asked the juror, "[Y]ou think that you might find Ms. Barrera guilty just because of her distracted driving and what happened to you, even though the [prosecutor] didn't prove his case?"[15] The juror answered, "Right. And I think that's where that – I – I'll have to work through that. But I think that is – that's a distinction I'll be able to make." The juror added, "But that's where I feel like there might be a conflict, but I think I could be rational."

Finally, the judge asked the juror if "it would be more difficult" "to analyze the facts because of this experience …?" The juror agreed. The judge followed up and asked if the juror could "[w]ithout hesitation" render a guilty or not guilty verdict. The juror responded, "Yes, I believe so."

The court ruled it was going to excuse the juror. The court stated the juror "was visibly upset" and exhibited "some pretty heavy concern" by coming forward to speak.

## B. Analysis

"The trial court may discharge a juror at any time if good cause exists to find that the juror is unable to perform his or her duty. (§ 1089.) 'The trial court's decision whether or not to discharge a juror under section 1089 is reviewed for abuse of discretion

---

[15] The opening statements are not reported in the record. It is reasonable to assume Barrera's counsel suggested the collision was based on distracted driving.

and will be upheld if supported by substantial evidence; to warrant discharge, the juror's bias or other disability must appear in the record as a demonstrable reality.' " (*People v. Lopez* (2018) 5 Cal.5th 339, 365.)

" 'The demonstrable reality test … requires a showing that the court as trier of fact *did* rely on evidence that, in light of the entire record, supports its conclusion that [good cause for removing the juror is] established. It is important to make clear that a reviewing court does not *reweigh* the evidence …. [T]he reviewing court must be confident that the trial court's conclusion is manifestly supported by evidence on which the court actually relied. [¶] In reaching that conclusion, the reviewing panel will consider not just the evidence itself, but also the record of reasons the court provides.' " (*People v. Armstrong* (2016) 1 Cal.5th 432, 450–451.)

We take no issue with the court's decision to remove the juror. The juror expressed emotional disturbance and hesitation in remaining impartial. The juror's final answer—"Yes, I believe so."—implies lingering hesitation. The court relied on this evidence to excuse the juror. The court's reliance was not an abuse of discretion. (*People v. Barton* (2020) 56 Cal.App.5th 496, 508 ["Good cause exists to discharge a juror when the juror loses his or her ability to render a fair and impartial verdict based on the evidence presented at trial."].) We reject Barrera's complaint.[16]

## IV. The Expert Witness Properly Testified About Nystagmus

An expert witness[17] testified a subject's position, i.e., standing, sitting, or lying down, is immaterial to accurately assessing nystagmus. Barrera believes the testimony violated Evidence Code section 801 because "it was outside the subject matter of [the expert's] area of expertise."

---

[16] The People address whether the juror intentionally withheld information. But Barrera makes no such claim.

[17] The expert witness was John Paul Lopez, a senior criminalist with the Department of Justice.

The People claim the expert "was properly qualified to give" the testimony. We agree the expert was properly qualified.

## A. Additional Background

The prosecutor asked the expert, "[W]hat effect does whether a person is standing, seated, or lying [down] have with the actual [nystagmus] test?" Barrera's counsel objected and the court asked the prosecutor to establish "further foundation" for the expert's experience.

The expert subsequently explained, "[H]orizontal gaze nystagmus is just the ability of the eyes to smoothly go from left to right or up and down for vertical." The expert's experience relative to nystagmus included attending "drug recognition school" at the California Highway Patrol and another "course," "witness[ing] people under the influence of various drugs" and "witnessing their" nystagmus "over 50 times," and "classroom training on toxicology, pharmacology …."

The expert also read a "National Highway Transportation Safety Administration study" "[w]here they studied the robustness of the [nystagmus] test." The test in the study "was modified … where the person is sitting, standing, or laying [*sic*] down." The expert then testified there is "no difference" in nystagmus test results based on the subject's physical position.

## B. Analysis

" ' "A person is qualified to testify as an expert if he [or she] has special knowledge, skill, experience, training, or education sufficient to qualify him [or her] as an expert on the subject to which his [or her] testimony relates." [Citation.] An expert witness's testimony in the form of an opinion is limited to a subject "that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact …." [Citation.]' [Citation.] The witness's qualifications may be established by his or her own testimony." (*People v. Fuiava* (2012) 53 Cal.4th 622, 672; see Evid. Code, §§ 720 & 801.)

"Error regarding a witness's qualifications as an expert will be found only if the evidence shows that the witness ' " '*clearly lacks* qualification as an expert.' " ' " (*People v. Farnam* (2002) 28 Cal.4th 107, 162.) "We … evaluate the trial court's decision to admit an expert's evidence for abuse of discretion and 'will not disturb a trial court's admissibility ruling " 'except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*People v. Parker* (2022) 13 Cal.5th 1, 49 (*Parker*).)

The court here did not err in permitting the expert to testify about nystagmus testing because the expert did not clearly lack qualification. The expert testified to great familiarity and training with the nystagmus test including personally witnessing its administration on several occasions. Specifically, with respect to the opinion actually offered, the expert had read and understood a study on the precise topic at issue.

Notwithstanding Barrera's objection, " ' " ' " [w]here a witness has disclosed sufficient knowledge of the subject to entitle his [or her] opinion to go to the jury, the question of the degree of his [or her] knowledge goes more to the weight of the evidence than to its admissibility.' " ' " ' " (*Parker, supra,* 13 Cal.5th at p. 49.) Accordingly, we reject Barrera's argument the expert was unqualified to render the nystagmus testing opinion.[18]

---

[18] Barrera also complains the expert was not qualified specifically "on the proper administration of the nystagmus tests." Although attorneys often ask judges to deem witnesses experts in specific fields, there appears no such requirement in the law. A party feeling aggrieved by a witness's opinion testimony is entitled to object to the witness's qualifications and to move to strike an unfounded opinion. Here, Barrera did object to the witness's qualifications and had the opportunity to challenge those qualifications.

13.

## V. There Is No *Miranda* Error

Prior to the officer conducting the drug recognition evaluation, Barrera invoked her right to silence. The court excluded from evidence at trial all testimonial evidence gleaned from the evaluation.

Barrera "submits that her performance of the [d]rug [r]ecognition [e]valuation is indeed testimonial in nature" and should have been excluded in its entirety. The People disagree. As explained below, the court did not err in finding nontestimonial evidence admissible at trial.[19]

### A. Additional Background

The officer testified he examined Barrera's eyes and administered the "Romberg"[20] test after Barrera invoked her right to silence. The court ruled, "Only the … Romberg would require some testimonial evaluation; so that would be excluded."

### B. Analysis

"The Fifth Amendment does not bar the admission of '[v]olunteered statements of any kind' [citation], nor those otherwise not resulting from interrogation. [Citation.] Nontestimonial responses by a suspect—even though made in the course of custodial interrogation—are not subject to the *Miranda* rule. [Citation.] The United States Supreme Court has drawn 'a distinction between "testimonial" and "real or physical evidence" for purposes of the privilege against self-incrimination.' [Citation.] Thus, a suspect may be compelled to provide a blood sample [citation]; participate in a lineup and

---

[19] The prosecution, in rebuttal during the trial, introduced the Romberg test results to impeach Barrera's trial testimony. She does not appear to challenge this ruling. Were we to address it, we would find no error. (*People v. Hoyt* (2020) 8 Cal.5th 892, 936 [" 'although statements elicited in violation of *Miranda* are generally not admissible, statements that are otherwise voluntarily made may be used to impeach the defendant's trial testimony.' "].)

[20] As relevant, the Romberg test involves asking a subject to "close their eyes and … guess 30 seconds in [their] head."

repeat a phrase provided by police [citation]; provide a handwriting exemplar [citation]; and read a transcript to provide a voice exemplar [citation]." (*People v. Cooper* (2019) 37 Cal.App.5th 642, 650.) "[P]hysical observations made by police [are] nontestimonial and" do not violate the right to silence. (*People v. Bejasa* (2012) 205 Cal.App.4th 26, 42.)

Here, the drug-recognition-evaluation officer, after Barrera invoked her right to silence, physically observed Barrera's eyes and testified to his observations in connection with his training and experience. This testimony does not violate the right to silence.

## VI. No Cumulative Error

There is no cumulative error because there are no errors to accumulate. (See *People v. Mataele* (2022) 13 Cal.5th 372, 422.)

## DISPOSITION

The judgment is affirmed.


SNAUFFER, J.

WE CONCUR:


DETJEN, Acting P. J.


PEÑA, J.

15.